FERNANDO AGUILAR *v.* LUCIEN BOURGEOIS.

The mere designation of the Recorder's office, as the place where the note is to be paid, does not
authorize the payment of it to the Recorder himself.

Without a special authority to the Recorder to collect it, the money left with him is to be considered
a deposit and at the risk of the depositor. The fact that the creditor endeavored to collect from
the Recorder the money which had thus been deposited for him does not imply that he considered
the deposit as a payment, nor bar his recovery from the debtor.

APPEAL from the District Court of Terrebonne, *Cole,* J.
    *Goode & Aycock,* for plaintiff and appellant.   *Connelly & Rightor,* for
defendant.

LEA, J.   This is an action on two promissory notes drawn by the defendant,
which were given as the price of a tract of land sold by the plaintiff to the de-
fendant on the 23d of October, 1854.   One of these notes, viz: the one for
$400 was made payable in all March, 1855, and the other for $225 was made
payable in all March, 1856.

By a clause in the act of sale, it was expressly stipulated "that the note for
$400 was to remain *deposited* in the office of the Recorder of the parish of
Terrebonne, until such time as the said vendor will cause to be cancelled cer-
tain judicial mortgages existing against him, and when he shall have complied
with all the above conditions and agreements, then the *said note shall be re-
turned to him.*"

The plaintiff avers that the mortgages referred to in the stipulation above
referred to have been erased, and that he has obtained possession of the above
described note, upon which he now brings suit.

It is needless to recapitulate all the matters set up in defence to the plaintiff's
action; the only matter at issue, as the case is presented to this court, being
whether the defendant is liable on the note for $400.   As respects this note,
the defendant avers that "the same has been fully paid and satisfied; that as
soon as the same became due and exigible, viz: on or about the first of April,
1855, respondent repaired to the office of the Recorder of the parish of Terre-
bonne, in whose possession the said note had been left, and at whose office the
same was payable, and plaintiff not being there to receive payment, respondent
paid the same to *J. Adrien Leblanc,* the then legally qualified Recorder of the
parish of Terrebonne, who was fully authorized to receive said payment.   That
the plaintiff was duly notified of said payment, and frequently demanded pay-
ment of said Recorder, and never called upon the defendant for payment until
after the death of *Leblanc,* who died insolvent."

No exception having been taken to the prematurity of the plaintiff's demand,
and the plea being *payment,* our inquiry is confined exclusively to the validity
of this alleged payment.   And first we will remark, that a mere designation of
the Recorder's office as the place where the payment of the note was to be
made by no means authorized a payment to the Recorder himself.   The Re-
corder was not a banker, nor is it shown that the note was left with him for
collection.   On the contrary, the stipulation in the act of sale would *indicate*
that a payment of the note at maturity was not contemplated by the parties,
unless certain judicial mortgages were erased, and in case the mortgages should
be erased, then it was provided that the note should be given up to the plaintiff.

The Recorder retained the note for the security of the defendant, not of the plaintiff, and if he is to be considered as standing in the relation of mandatary towards either of the parties, it must be the defendant, not the plaintiff.

Again, the endorsement upon the note made by the Recorder at the time he received it, shows that he did not consider it as deposited with him for collection. It is as follows: "Deposited for safe keeping for *F. Aguilar*, until he raises the mortgage on the land sold."

Indeed we should infer from the terms of the bill of sale and the acts of the parties, that the note was not to be intrusted to the plaintiff at all until he had complied with the stipulation respecting the mortgages. A delivery of the money under such circumstances to the Recorder must be considered as a deposit, not as a payment, and, as such, was at the risk of the depositor. C. C. 2136.

Indeed, so far was the defendant from considering the deposit as a payment to the plaintiff, that at the time it was made the defendant left express instructions with the Recorder that it was "*not to be paid* to *Mr. Aguilar* till *Mrs. Malbraux's* renunciation had been procured."

But it is contended that the plaintiff himself has ratified the validity of this deposit as a payment. The plaintiff certainly made repeated and ineffectual efforts to collect the amount from the Recorder, and he is shown to have spoken of this deposit as "his money in the Recorder's office." There is nothing, however, in such conduct and language which implied that he considered the deposit as a payment, or that he intended to release the defendant.

The case of *Breen* v. *Schmidt*, 6th Annual, though applicable so far as it relates to the principles announced, did not present a similar state of facts with that now under consideration. The judgment for the defendant in that case was placed exclusively upon the ground, that the plaintiff had instructed the defendant to make payment to the notary of the first instalment upon the purchase of a lot. It was held that by so doing the defendant *consented* to consider the delivery of the money to the notary as a payment.

In a subsequent case, of *Brown* against the same defendant, it was held that as a general rule such a delivery of money to the notary was a deposit, not a payment. See 7 An. 349.

We find no evidence in the record of a consent on the part of the plaintiff to consider the delivery of the money to *Leblanc* as a payment of the note.

It is ordered that the judgment appealed from be reversed; that the plaintiff, *Fernando Aguilar*, do have and recover of the defendant, *Lucien Bourgeois* the sum of $625, with interest at the rate of eight per cent. per annum on $400 thereof from the 1st day of April, 1855, till paid, and with like interest on $225 thereof from the 1st day of April, 1856, till paid, with costs of suit, and that the plaintiff's right of special mortgage, stipulated in the act of sale referred to in the petition, be recognized, together with the privilege of said plaintiff as vendor upon the property described in the petition, and that the same be sold to satisfy the plaintiff's claim, and the proceeds applied to the payment of the plaintiff's demand, with privilege and preference as aforesaid. It is further ordered that the costs of this appeal be paid by the defendant and appellee.